

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
FEB 16 2018
ARTHUR JOHNSTON
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

EARL DELACK, ANDREA DELACK, AND
HANNAH DELACK, REBECCA DELACK, AND
OWEN DELACK, MINORS,
BY AND THROUGH THEIR NATURAL
GUARDIANS, EARL AND ANDREA DELACK         **PLAINTIFFS**

V.                                CIVIL ACTION NO. 1:18cv56 LG-RHW

HUNT SOUTHERN GROUP, LLC FKA
FOREST CITY SOUTHERN GROUP, LLC,
FOREST CITY RESIDENTIAL MANAGEMENT,
LLC, HUNT MH PROPERTY MANAGEMENT LLC,
UNKNOWN JOHN AND JANE DOES A THROUGH
M, AND OTHER UNKNOWN CORPORATE
ENTITIES N THROUGH Z                       **DEFENDANTS**

## NOTICE OF REMOVAL

TO:   THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE
      SOUTHERN DISTRICT OF MISSISSIPPI, SOUTHERN DIVISION

      Honorable Connie Ladner
      Clerk, Harrison County Circuit Court
      1801 23rd Avenue
      Gulfport, Mississippi 39501
      ***HARRISON COUNTY CIRCUIT CLERK***

      William Lee Guice III, Esq.
      Maria Martinez, Esq.
      Rushing & Guice, P.L.L.C.
      Post Office Box 1925
      Biloxi, Mississippi 39533-1925
      ***COUNSEL FOR PLAINTIFFS***

Defendants Hunt Southern Group, LLC fka Forest City Southern Group, LLC ("Hunt Southern"), Hunt MH Property Management LLC ("Hunt MH") and Forest City Residential Management, LLC ("Forest City")(collectively "Defendants") hereby remove to this Honorable Court a civil lawsuit filed in the Circuit Court of Harrison County, Mississippi, Second Judicial

216090.4

District, Cause No. A2402-2017-157, pursuant to 28 U.S.C. §§ 1441, 1442, and 1446. Removal is proper under 28 U.S.C. § 1441(a) because the claims underlying this action occurred on a federal enclave, and, as such, present a federal question. Removal is proper under 28 U.S.C. § 1442(a)(1) because Defendants acted as agents of the United States and/or are persons acting under a federal office. Defendants, subject to all their defenses, including their Rule 12 defenses, hereby remove this case and give notice of the removal of this action from the Circuit Court of Harrison County, Mississippi, Second Judicial District to the United States District Court for the Southern District of Mississippi, Southern Division. As grounds for this removal, Defendants state as follows:

## I. STATE COURT PROCEEDINGS

1. On or about December 22, 2017, Plaintiffs Aaron Eden, Victoria Eden, and Elisha Eden and Adrienne Eden, Minors By and Through Their Natural Guardians, Aaron Eden and Victoria Eden (collectively "Plaintiffs") filed a Complaint against Defendants in the Circuit Court of Harrison County, Mississippi, Second Judicial District. The Complaint alleges the following causes of action: (1) Negligence; (2) Gross Negligence; (3) Breach of Contract; (4) Civil Conspiracy; (5) Alter Ego; (6) Fraudulent Concealment; and (7) Intentional Endangerment.

2. Hunt MH and Hunt Southern were both served on January 19, 2018. Attached is a copy of the Complaint and Summons served upon Hunt MH and Hunt Southern. Collective Ex. A. Forest City was served with a copy of the Summons and Complaint on January 22, 2018. Ex. B. No other pleadings have been filed in this action.

3. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b). *See, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999); 28 U.S.C. §

1446(b)(2)(B)("Each defendant shall have 30 days after receipt by service on that defendant of the initial pleading described in paragraph (1) to file the notice of removal.")

4. Pursuant to 28 U.S.C. § 1446(d), all adverse parties are being provided with written notice of removal, and a copy of this Notice of Removal, as well as a Notice of Filings of Notice of Removal, which is being filed with the Clerk of the Circuit Court of Harrison County, Mississippi, Second Judicial District.

5. Attached hereto as collective Exhibit C is a certified copy of all the documents that appeared in the state court record as of February 12, 2018.

## II. VENUE

6. Venue lies in the United States Court District Court for the Southern District of Mississippi Southern Division pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because this action was originally brought in the Circuit Court of Harrison County, Mississippi, First Judicial District.

## III. GROUNDS FOR REMOVAL

7. This action is removable to this Court on two grounds: (1) pursuant to 28 U.S.C. § 1331 because the claims alleged arose on a federal enclave, such that they present a federal question over which this Court has original jurisdiction; and (2) under 28 U.S.C. § 1442(a)(1) because, at all relevant times, Defendants acted as agents of the United States and/or are persons acting under a federal office.

### A. Federal Question Jurisdiction is Proper

8. Federal questions are inherent in this case. Plaintiffs' Complaint involves a federal enclave and issues of federal law. *See* Compl. ¶¶ 11-13. Plaintiffs were assigned "military housing" and signed a "Military Lease Agreement" for "military housing specifically for Junior

Enlisted (E1-E6)" such that Defendants are being sued for owning or operating such housing under the Military Housing Privatization Initiative. *Id.* Each and every act relevant to Plaintiffs' alleged injuries occurred at Keesler Air Force Base ("Keesler"), a federal military enclave.

### a. The Acts Complained of Occurred on a Federal Enclave

9. Article I, section 8, clause 17 of the United States Constitution (the "Enclave Clause") provides, in relevant part, that "Congress shall have the power . . . to exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

10. The standard for determining whether a court has jurisdiction over civil claims arising on a federal enclave is to determine: (1) whether the claims alleged occurred on a federal enclave; (2) whether the United States has concurrent jurisdiction over the enclave and, if so, the reservations the United States or the State made with regard to its jurisdiction in ceding jurisdiction; and (3) whether it is important to have a federal forum in which to litigate the controversy arising on federal enclaves in order to prevent state judicial interference with matters likely to involve substantial federal interests. *See Federico v. Lincoln Military Housing*, 901 F.Supp. 2d 654, 675-76 (E.D. Va. 2012).

11. Pursuant to the Enclave Clause, "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). A federal enclave is created where the United States acquires state land by purchase or condemnation with the state's consent, regardless of whether the state consents at the time of the acquisition or thereafter. *See Paul v. United States*, 371 U.S. 245, 263 (1963).

12. The United States acquired exclusive jurisdiction over the lands composing Keesler under the terms of § 1, 84 Stat. 835, 40 U.S.C. § 255, 2 in a series of letters between the Governor of Mississippi and the Secretary of War. On January 9, 1945, Secretary of War Stimson wrote Governor Bailey acknowledging the acquisition of exclusive jurisdiction.

13. Indeed both the United States Supreme Court and the District Court for the Southern District of Mississippi have acknowledged Keesler is a federal enclave. "The District Court acknowledged that Keesler Air Force Base . . . '[is] to Mississippi as the territory of one of her sister states or a foreign land. [It] constitute[s] [a] federal island[] which no longer constitute[s] any part of Mississippi nor function under its control.'" *U.S. v. State Tax Com'n of Miss.*, 412 U.S. 363, 376 (1973)(*quoting U.S. v. State Tax Com'n of Miss.*, 340 F.Supp. 903, 906 (S.D. Miss. 1972))

14. Some or all of the military housing at issue in these cases were originally built and managed by the United States Air Force. When the federal government acquires land from a state and "upon them forts, arsenals, or other public buildings are erected for the uses of the general government, such buildings, with their appurtenances, as instrumentalities for the execution of its powers, will be free from any such interference and jurisdiction of the state as would destroy or impair their effective use for the purposes designed." *Ft. Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 539 (1885); *see also Pundt v. Pendleton*, 167 F. 997, 1001 (N.D. Ga. 1909). The Supreme Court concluded that exempting these buildings and appurtenances on military bases from state jurisdiction "is essential to the independence and sovereign authority of the United States within the sphere of their delegated powers." *Ft. Leavenworth*, 114 U.S. at 539.

15. Any law in a federal enclave "must derive its authority and force from the United States and is for that reason federal law." *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952).

Mississippi ceded the land for Keesler to the United States, and in so doing, the state also ceded its civil jurisdiction over persons or lands to the federal government.

b. Plaintiffs' Claims Involve Substantial Federal Interest

16. Plaintiffs Complaint concedes there is a federal question at issue in this case. Plaintiffs allege that they are a military family who are signatories to a Military Lease Agreement with Defendants wherein they were assigned military housing. Compl., Ex. C, ¶ 12. Plaintiffs allege "Defendants exercised custody and control over" their housing "through a fifty year lease initiated by the United States Department of Defense through a program called the Military Housing Privatization Initiative." *Id.* at ¶ 13. Defendants summarily claimed "[e]ssentially, while Defendants own the improvements on the land and maintain custody and control of the property, the United States maintains an ownership interest in the land." *Id.*

17. The thrust of Plaintiffs' Complaint centers on their assertion that Defendants failed to rectify or properly maintain certain aspects of the base rental unit at Keesler. The alleged actions or inactions of Defendants, as claimed by Plaintiffs, was exposure to mold and excessive moisture in their military housing unit, ultimately resulting in the alleged injuries. *Id.* at ¶¶ 14-26.

18. As acknowledged by Plaintiffs, their claims directly implicate the Military Housing Privatization Initiative ("MHPI"). *Id.* at ¶13. In 1996 Congress enacted the MHPI as part of the National Defense Authorization Act for Fiscal Year 1996 giving the Department of Defense certain authorities aimed at increasing and improving housing for military service members and their families. The National Defense Authorization Act for Fiscal Year 1996, 10 U.S.C. § 2801(a)(1), Pub. L. 104-106, 110 Stat. 187 (February 1996), amended chapter 169 of title 10, United States Code, to add a new subchapter entitled Alternative Authority to Construct

and Improve Military Housing (codified as amended at 10 U.S.C.A. §§ 2871-2885 (West 2001)). The MHPI encouraged privately-funded development of military housing to provide the necessary housing faster and more efficiently than traditional military construction procedures would otherwise allow. *Id.* The various branches of the military were permitted to enter into joint public-private ventures with the private business sector through a competitive bidding process. *Id.* The government retains fee simple ownership over the land, and a joint venture between the government and a private sector business becomes the lessee under a 50-year lease with the government to own, maintain, and operate military housing on the federally-owned land. *Id.*

19. In this case, Forest City Southern Group, LLC nka Hunt Southern was formed for the express purpose of responding to Request for Qualifications No. AFCEE-08-001 issued by the United States of America, acting by and through the Secretary of the Air Force. Ex. D, Forest City Southern Group, LLC Operating Agreement. The sole purpose of the company is "exclusively to lease, design, finance, demolish, develop, construct, renovate, own, manage, acquire, operate, sell, and maintain residential units and related improvements comprising the Project and to conduct any activities that are related or incidental to that business. The Company shall engage in no other business." *Id.* at p. 7 § 2.03.

20. Forest City Southern Group, LLC nka Hunt Southern entered into a Property Management Agreement with Forest City to facilitate and engage "the services of a property manager to be responsible for the management and operation of" the Keesler ground lease.[1] Ex. E, p. 1.

21. *Federico v. Lincoln Military Housing* is directly on point. In *Federico*, Plaintiffs alleged that they were exposed to mold and excessive moisture conditions in the military home

---

[1] Hunt MH was formed in November 2015. See Ex. F. Subsequently, Hunt MH assumed the property management role. Comp, ¶6.

that they leased from defendants, a public-private venture and a property management company. 901 F.Supp. 2d 654, 657 (E.D. Va. 2012). The court, explaining the importance of the MHPI, found that "a review of the Complaint, the facts, the parties, and the nature of the public-private venture reveal that almost everything in this case implicates the United States Navy in one form or another." *Id.* at 673. Of particular import to the court was the fact that the case "flows from, and is governed by, a federal privatization program, which has strict reporting requirements that obligate the Secretary to report to Congress on plans for housing privatization activities and best practices for the execution of housing privatization initiatives." *Id.* Thus, in *Federico*, the Navy's retention of fee simple ownership, the Navy's large amounts of capital contributions, and the significant role that the Navy played in operating the public-private venture led to the conclusion that plaintiffs' complaint implicated substantial federal interests. *See id.* at 673-74.

22. The *Federico* court found it noteworthy that the Navy was responsible for setting the rental rate and the terms of the rental agreement with service members. *See id.* As the court explained:

> The Navy gives its service members a Basic Allowance for Housing, which they use to pay rent to [the public-private venture]. Thus the Navy provides the housing for the tenants, furnishes the tenants, and provides the tenants with the money to pay the rent set by the Navy. Basically, simplifying this military housing privatization initiative, it is clear that this is a real estate venture with a management company, and everything, including the structure of the management company, involves the Navy.

*Id.* at 674.

23. In the instant case, the United States, through the Secretary of the Air Force, entered into a 50-year ground lease beginning September 30, 2011. Ex. G. The purpose of such a lease was "the development, demolition, design, construction, renovation, operation, maintenance, repair, replacement, and management of a rental housing development . . .

primarily for use by military personnel and their dependents authorized to live on the Base ... ." *Id.*, p. 2. The Air Force "under the authority contained in 10 U.S.C. § 2878 determined that the leasing of certain property within the boundaries of Keesler Air Force Base . . . will be advantageous to the Government and in the public interest." *Id.*, p. 1. Under the ground lease, the Air Force retains fee title ownership of the land on which the military housing is located, and, with certain exceptions, the Air Force conveyed ownership of the existing housing units and other improvements located on the land to Hunt Southern, as well as ownership of future improvements for the term of the lease. Upon termination of the ground lease, ownership of the housing units and other improvements will revert to the Air Force or, if the Air Force no longer owns the land, the then-owner of the land. The Air Force also retains certain oversight rights with respect to the housing, including the right to inspect the premises "at all times for any purposes..." *Id.* at 26, Condition 13; p. 16, § 10.6. For Qualified Military Residents, the rental rate is generally equal to the Basic Allowance for Housing of the Qualified Military Resident, which is set by the Department of Defense. Ex. E, Property Management Agreement Ex. A. thereto ¶ 4 Rent.

24. As in *Federico*, here the Air Force exerts control over the Keesler housing rentals. Under the lease, Defendants must prioritize renting housing to eligible service members and their families, and can only offer housing units to "Other Eligible Tenants" as provided in the lease and in accordance with the Rental Rate Management Plan and the Unit Occupancy Plan. Ex. G, p. 37 §19.9. The Air Force retains the right to approve any "proposed changes to the form of Tenant Lease" such that "[a]ll 'material revisions' to the form of Tenant Lease shall require the written consent of the Government." *Id.* at § 19.7. "Material revisions included policies on pets,

deposits or fees, permissible length of the lease term for Other Eligible Tenants, and any other changes that impose any additional costs, obligations or requirements on Target Tenants." *Id.*

25. Because the Air Force owns the land where the housing units at issue are located, controls the housing market, including who may occupy the residential units and the amount of the Basic Allowance for Housing, and retains control over other aspects of Defendants' operations pursuant to the Property Management Agreement and Ground Lease, the Complaint implicates substantial federal interests such that federal enclave jurisdiction exists over Plaintiffs' claims.

### B. Removal is Proper Under 28 U.S.C. § 1442(a)(1)

26. The Federal Officer Removal Statute authorizes removal of a civil action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office..." 28 U.S.C. § 1442(a)(1). The Supreme Court has been clear that "[t]he words 'acting under' are broad and . . . must be 'liberally construed.'" *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147(2007)

27. Corporate entities are "persons" under 28 U.S.C. § 1442(a)(1). *See* 1 U.S.C. § 1; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998). Therefore, Defendants are "persons" within the meaning of the statute. The Supreme Court has long recognized that the Federal Officer Removal Statute applies to private persons and corporate entities "'who lawfully assist' the federal officer 'in performance of his official duty.'" *Watson*, 551 U.S. at 147 (2007)(*quoting Davis v. South Carolina*, 107 U.S. 597, 600(1883)).

28. To successfully remove a state lawsuit under the Federal Officer Removal statute, a defendant must meet each of four elements: (1) that the defendant is a person; (2) that the

federal government or federal officer directed the defendant to take action; (3) that the action was the causal nexus of the plaintiff's claim; and (4) that a colorable federal defense exists to the claim. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989). Defendants meet each of these elements.

29. There exists a federal question because Plaintiffs' right to recover depends, among other things, on the resolution of a substantial issue of the federal law of derivative sovereign immunity. *See Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004). In *Gutierrez de Martinez v. Lamagno*, the Supreme Court posited that "whether an employee was acting within the scope of his federal employment [was] a significant federal question." 515 U.S. 417, 435 (1995). Whether Defendants are imbued with the U.S. Air Force's sovereign immunity when it operates military family housing on behalf of, and within the scope of a real estate public-private venture with, the U.S. Air Force is a significant federal question.

30. If "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law" – such as derivative sovereign immunity in this case – federal question jurisdiction may nevertheless attach to state-law claims even if a federal question does not appear on the face of the complaint. *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d at 1314; *see also Jones v. Freeman*, 400 F.2d 383, 387 (8th Cir. 1968)(finding that federal question jurisdiction existed based on the facts of the case, "although [the facts were] not [pled] artfully").

31. The United States, as a sovereign, is immune from suit unless it has waived immunity. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). Derivative sovereign immunity precludes liability for contractors performing work pursuant to a government contract. *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20 (1940)("[I]f this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of

Congress, there is no liability on the part of the contractor for executing its will."); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963)("To the extent that the work performed by McLaughlin, Inc., was done under its contract with the Bureau of Public Lands, and in conformity with the terms of said contract, no liability can be imposed upon it for any damages claimed to have been suffered by the appellants.").

32. The United States, and by extension Defendants, has not waived its immunity under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, because the FTCA's fraud and discretionary function exceptions are applicable here. *See* 28 U.S.C. §§ 2680(a), (h). Where a plaintiff allegedly was misled by a statement and the plaintiff only suffered an alleged injury because of reliance on the erroneous statement, the fraud exception to the FTCA bars the claim. *See O'Ferrell v. United States*, 968 F.Supp. 1519, 1540 (M.D. Ala. 1997)(*aff'd*, 253 F.3d 1257 (11th Cir. 2001)). The United States delegated to the Defendants the operation of military housing at Keesler Air Force Base, a discretionary government function for purposes of the FTCA. *See* Military Housing Privatization Initiative, 10 U.S.C. § 2801, Pub. L. 104-106, 100 Stat. 187 (1996); *see also Angle v. U.S.*, 931 F.Supp. 1386, 1396-97 (W.D. Mich. 1994) *aff'd sub nom. Angle v. U.S.* 89 F.3d 832 (6th Cir. 1996)("[W]hether or not to undertake efforts to identify or remediate the [lead paint] hazard [at Air Force housing], or to warn residents about it, was a decision implicating the type of policy considerations" that fell under the FTCA's discretionary function exception.).

33. When considering whether a corporation was primarily acting as an instrumentality or agency of the United States for purposes of the FTCA, courts evaluate the following factors: "(1) the federal government's ownership interest in the entity; (2) federal government control over the entity's activities; (3) the entity's structure; (4) government

involvement in the entity's finances; and (5) the entity's function or mission." *Mendrala v. Crown Mortgage Co.*, 955 F.2d 1132, 1136 (7th Cir. 1992). Here, the United States, by and through the Secretary of the Air Force, retains control over Defendants' activities through the ground lease and approves Defendants' leases with military tenants and Defendants' operations and maintenance plans pertaining to the rental units. See 10 U.S.C. § 2285 (requiring oversight and accountability measures for military housing privatization projects). Under the public-private venture structure authorized by Congress, the U.S. Air Force retains ownership of the land, Defendants own and operate housing during the term of the ground lease, after which time the housing reverts back to the Air Force. The Air Force is involved in Defendants' finances as Defendants' revenues derive from the Air Force's Basic Allowance for Housing payments. *See* 10 U.S.C. § 2883a. Under the fifth factor, providing housing to military personnel and their families directly contributes to national security and other military functions, and Congress created the military housing privatization initiative to improve the quality of housing for military families. *See Angle*, 931 F.Supp. at 1396-97; 10 U.S.C. § 2801.

34.     There is a causal nexus between Plaintiffs' claims and Defendants' actions pursuant to the Ground Lease and Property Management Agreement. *See, e.g. Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F.App'x 268, 271 (9th Cir. 2014)(noting that there is authority from other circuits holding that a Federal Employees Health Benefit Act's administrator acts under federal authority); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1881 (7th Cir. 2012)(finding "acting under" requirement satisfied where defendant acted under the Navy by installing asbestos in turbines supplied to the Navy).

35.     The Court need not decide whether derivative sovereign immunity applies at this juncture in order to assume jurisdiction. Rather, where "jurisdictional issues are intertwined with

the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." *Simanonok v. Simanonok*, 787 F.2d 1517, 1520 (11th Cir. 1986)(quoting *Eaton v. Dorchester Development*, 692 F.2d 727, 733 (11th Cir. 1982)). When a sufficient record exists following discovery for the Court to determine whether derivative sovereign immunity applies, the Court then can decide whether it retains jurisdiction under 28 U.S.C. § 1331. *See Simanonok*, 787 F.2d at 1520.

### V. JOINDER AND CONSENT

36. All Defendants required to join in or consent to this removal have done so, or will do so.

### VI. CONCLUSION

37. By removing this action to this Court, Defendants do not waive any defenses, objections or motions available under state or federal law. Nothing in this Notice or Removal shall be interpreted as a waiver, estoppel, preclusion or relinquishment of Defendants' ability or right to assert any claim, counterclaim, cross-claim, third party claim, defense or affirmative matter, including, but not limited to: (1) lack of jurisdiction over the person; (2) improper venue; (3) insufficiency of process; (4) insufficiency and/or failure of service of process; (5) improper joinder of claims and/or parties; (6) failure to state a claim; (7) failure to join an indispensable party(ies); (8) standing; (9) waiver; (10) failure to exhaust administrative remedies; or (11) any other pertinent claim or dense available under any states or federal statute or Rule or otherwise.

WHEREFORE, Defendants pray that the above-entitled action be removed from the Circuit Court of Harrison County, Mississippi, Second Judicial District to the United States District Court for the Southern District of Mississippi, Southern Division.

This the 16th day of February, 2018.

216090.4

14

_____
Walter H. Boone, MSB#8651
Jennifer J. Skipper, MSB#100808
BALCH & BINGHAM LLP
188 East Capitol Street
Suite 1400
Jackson, MS 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
Email: wboone@balch.com
       jskipper@balch.com

**Attorneys for Hunt Southern Group, LLC fka Forest City Southern Group, LLC and Hunt MH Property Management, LLC**


_____
Joshua J. Metcalf, MSB#100340
Alison O'Neal McMinn, MSB#101232
FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street
Suite 2200
Jackson, MS 39201
Telephone: (601) 960-8600
Facsimile: (601) 960-8613
Email: joshua.metcalf@formanwatkins.com
       Alison.McMinn@formanwatkins.com

**Attorneys for Forest City Residential Management, LLC**

## CERTIFICATE OF SERVICE

I, Jennifer J. Skipper, one of the attorneys for Hunt Southern Group, LLC fka Forest City Southern Group, LLC and Hunt MH Property Management LLC, do hereby certify that I have this day served a true and correct copy of the above and foregoing pleading to Plaintiffs' counsel of record by hand delivery and/or United States Mail, postage prepaid to all other known counsel of record:

> William Lee Guice III, Esq.
> Maria Martinez, Esq.
> Rushing & Guice, P.L.L.C.
> Post Office Box 1925
> Biloxi, Mississippi 39533-1925
> ***COUNSEL FOR PLAINTIFFS***

This, the 16th day of February, 2018.

/s/ Jennifer J. Skipper